May it please the Court, my name is David Smith and I'm here on behalf of Conway, the appellant cross-appellate and verdict winner below. I would like to reserve five minutes for rebuttal if I might. That's grand. The reason why we're here, your honors, is because Conway entered into an agreement, a licensing agreement, with Regscan. The licensing agreement addressed the issue of a concept as well as some software that Conway had developed for its internal use in the trucking industry. Conway is a leader in the trucking industry and it came to Regscan knowing that Regscan had the ability, theoretically, to turn this concept and this software into a usable and marketable product. The licensing agreement set forth the understandings of the parties very clearly, beginning in the recital provisions and continuing through the agreement itself. The licensing agreement was signed in May of 2000 after some period of negotiation. The product itself, developed by Regscan with significant assistance, as shown in the record below, turned into a usable product, ultimately called and marketed as Hazmat Loader. Let me take you to what I understand to be sort of the heart of your appeal. You tell me if I'm wrong, okay? If I understand your briefing correctly, Mr. Smith, your point is that the evidence was such that the jury, having decided that the one program, Hazmat Manager, was covered, it really followed that Enforcer, the Enforcer program, had to be covered. That's absolutely correct, Judge Stork. Okay. But your opposite party says, look, at the charge conference, we talked about the charge where it was specifically going to be said, you could find, you, the jury, could find one or more of the programs is covered by the agreement. In the charge, it was given that way. You could find one or more are The court went back and went over that charge again and said, one or more could be covered by the agreement. So help us understand why something that was raised in the charge conference and then said to the jury twice, the second time at plaintiff's request, could be a basis for overturning the The issue as presented to the jury and the jury charge had already been addressed and the court had determined as a matter of law that the Rule 50 motion did not apply. When we got to the charge conference, the court had determined that there were potentially separate products here and charge the jury. In terms of the differentiation between the products, we are saying that the charge was the result of the jury. Actually, the jury's verdict was inconsistent with reasonable inferences that could have been drawn from the facts. Once it determined that hazmat loader was a product covered, the testimony from Mr. Balaban found at pages 113 and 114 of the record was that hazmat enforcer was a derivative of hazmat manager. Once the jury found that hazcalc led to hazmat loader and thus constituted a product creating a breach of the agreement, it had to have no further meaning and basically it was an unequated inevitability and it would make no sense for the judge or jury to dismiss the product as being the product and panelty the hash bed, and say, well, you know, we have this glorious product, 110S Manhattan, Lange, I've got about six page sites, to the effect that these were very different products. So the jury could have found, could it not, that the Enforcer product was not in fact covered by the licensing agreement because of the testimony. Judge Rendell, the issue from Reg Scan's position was that none of these products was a derivative or covered by the licensing agreement. Yes, there were some differences between Hazmat Trucking Enforcer and Hazmat Loader. They were developed, however, about the same time. One had some additional bells and whistles, the Enforcer product, because it was used for enforcement people. However, the manager product had been used prior to the development of the enforcement product by law enforcement as well. But my point is there was testimony to the effect that the Enforcer product was very different from the manager, thus permitting a jury to find that, in fact, it was not covered by the licensing agreement. And don't you have an uphill battle when the jury has made that determination with all the facts? You have to convince us that no reasonable juror could have found this. That is the correct burden, Judge Rendell. My response to the question is, yes, there were differences, but the jury following the pattern of the syllogism, if you had Hazmat Manager and the jury concluded that that was derived from Hazmat Trucking, and Mr. Balaban testified that Enforcer derived from Hazmat Loader. They probably didn't buy Mr. Balaban's testimony, or they believed these other gentlemen more convincingly. But that's their role. How can you say that there's absolutely no way that they could find that? Again, the testimony from the others was that all these products were different from Hazcal. Not just Hazmat Trucking Enforcer. Hazmat Loader was different from Hazcal. Hazmat Trucking Enforcer was different from Hazcal. Hazmat Greenscreen, which we are not saying is an issue, also is an issue. Well, I won't argue with you, but I read the record differently. You submitted to the jury that Greenscreen was the same. Would it have been reversible error for the jury to have found in your favor, with respect to all three products? No, sir. So you want to have it both ways, do you not? You're saying that, and perhaps I'm oversimplifying it, but it seems to me that Conway, he's here, argued that they're entitled to damages on all three products. Reg Scan said that Conway's entitled to damages on none of them, and the jury said yes on one and no on the other. To the other two, I'm sorry. There was less testimony affirming that syllogism from Hazcal to Loader to Greenscreen, because it was a different application, it was a mainframe application, and there was no testimony from Reg Scan's side, meaning Mr. Balaban, I could not get him to agree that Greenscreen was the same product, or derived from the same product line, and for that reason, I think that it was reasonable for the jury to determine factually, and I cannot argue that no reasonable jury could determine otherwise, that Greenscreen was a different product. So the difference between the two is the Balaban admission, and perhaps if all there was in evidence was the Balaban admission, then there would be no reasonable juror that could conclude against you on that, but doesn't Judge Rendell, isn't she right when she points out that there is other evidence that goes the other way, and isn't it the jury's function to make that call, not our function? Again, I note that Judge Rendell has stated the correct standard. The correct standard, of course, is whether a jury could reasonably make a determination that Hazmat Trucking Enforcer was not covered by this agreement, and I submit again, for the same reasons that I've said, that if you were to argue that the Model T was not derived from the Model A Ford, I don't think you could do that, I don't think a jury could reasonably infer that. No, I'm just pointing to Appendix 116, Shanahan testifying in direct, says Trucking Enforcer doesn't use anything from HazCalc, Lange's direct testimony, 118, 119, Trucking Enforcer has three times the functionality of Manager Loader and doesn't contain anything from HazCalc. I mean, if somebody did testify that the Edsel did not derive from the Model T, the jury could, you know, could agree with that testimony, but they're not sure what we're dealing with, and that's all they have here, presumably, I mean, unfortunately, we have a lot more knowledge about the Edsel and the Model T, but a jury has to go on what's put before them. And my only response to that, Judge Rendell, is if you look at the record, they say the same thing about Hazmat Trucking Enforcer, that it wasn't derived from HazCalc either, and that's the differentiation I'm trying to make and the point that I'm trying to establish. Thank you. All right. We'll hear from you on rebuttal. Thank you very much. Good morning, Your Honors. May it please the Court. My name is Dan Schranghammer. I'm here on behalf of Rakeskin Incorporated, the appellee and cross-appellant in this matter. Boiled down to its essence, I think what Conway is trying to do is overturn two days' worth of testimony in a jury trial with a ten-second exchange between counsel and Mr. Balaban. As Judge Rendell pointed out, there is significant testimony in the record about the differences between Hazmat Manager slash Hazmat Loader and Hazmat Trucking Enforcer. But do we have an inconsistent verdict here with respect to what counsel just said? The jury was told that both of these products were not derivative from HazCalc. So how could it find one and not the other? Well, first and foremost, Your Honor, when I heard that, I wrote here, what else were we supposed to argue? Rakeskin's position going into this case was that none of its products, Hazmat Loader, Hazmat Trucking Enforcer, and Hazmat Green Screen, were considered to be, quote, products under the terms of the agreement. The jury disagreed with respect to one. And it heard significant evidence about the differences between Hazmat Loader and Hazmat Trucking Enforcer, not to mention Hazmat Green Screen. And given those significant differences, I think the jury verdict is actually quite consistent. Well, help me out with that, because let's walk through what I think the district court took to be the logic reading the district court's discussion on the Rule 50 and Rule 59 motion. The district court judge says Rakeskin owes money on royalties for products, right? That's correct. Step two, products are commercial implementations of the program. Step three, the program is defined as a software program that, in response to stored legislatory information, generates data corresponding to required placarding, labeling, and load segregation for hazardous materials. That's the definition of program, right? That's correct, Your Honor. Okay. So, how does Hazmat Enforcer not fit in that logical stream? Well, I think what the jury said, and this was one of the big issues, and it was an issue that was summarized in our closing statement, our closing argument, that Hazmat Trucking Enforcer was not a commercial implementation of HazCount. It was so much different than Hazmat Loader that the jury was able to say Hazmat Loader was a commercial implementation, but Hazmat Trucking Enforcer wasn't. It's, to use the Model A, Model T, ETSL analogy, it's like saying a freightliner semi with all of its bells and whistles and its different functionality is not necessarily a commercial implementation of a Model T. Was anything made of the fact that Enforcer was for government so that the jury might have, I mean, this just occurred to me, and I didn't know if it occurred to the jury, so the jury might have said, well, gee, this isn't really commercial. It's made for government use, so we're not going to talk about this as a commercial implementation. There was a significant amount of testimony when the witnesses were testifying about the differences between Hazmat Loader and Hazmat Trucking Enforcer. One of the key differences was the way Hazmat Trucking Enforcer came about. It was specifically designed to meet the needs of law enforcement. That's why it has all the different functionality. You can look up regulations directly from the program. You can find all placarding options looking at the program. It contains emergency response guides. It contains audit tools. It contains all sorts of functions that Hazmat Loader or Hazmat Manager do not contain. Now, as far as whether or not the jury said, well, since it's for law enforcement, it's not a commercial application, I don't know that. There wasn't any testimony or argument to that effect? There was no argument to that effect, Your Honor. The argument went to the distinctions, the clear distinctions between Hazmat Loader and Hazmat Trucking Enforcer, including the reason why Hazmat Trucking Enforcer was developed. If you look at the standard that we're arguing here, the first argument is that there wasn't a sufficient amount of evidence. Is there enough evidence for a reasonable jury to find that Hazmat Trucking Enforcer was not a quote, product under the terms of the agreement? And I think the record clearly shows that there was enough evidence. We have, I wrote down this morning, 11 different instances of testimony about the differences between Hazmat Loader and Hazmat Trucking Enforcer. Now, with respect to- Let me ask a question here. Your opponent says, look, this district judge needed to tell the jury what was meant by a product within the terms of the agreement. There was some contract construction that was necessary. If I'm understanding right, it's something to the effect that if Enforcer is really so different in degree as to be different in kind, that's something that should have been rooted in a discussion of what the language of the agreement itself was. You guys obviously take a different view. Would you elaborate on why you think they're wrong, that if difference in degree equals difference of kind, that was something that warranted discussion and review by a district court beforehand or to the jury? Well, first and foremost, Your Honor, the jury charge, the instructions that were given to the jury, were the jury instructions or the proposed jury instructions that were offered by Conway, not by Rakescan. My proposed jury instructions were significantly different, and I lost that argument. So for Conway to come up and say, well, the judge should have changed the jury instructions and should have elaborated a little bit more on what was meant by the term product, I think falls under the concept of invited error, and there's a Third Circuit decision that we cite at least twice in our brief. Well, and there was no objection to the jury charge. No, well, there was on my part, Your Honor. Again, I was overruled on those objections. Did the other side ever ask for contract interpretation, construction before? No, Your Honor. In fact, we went over this a number of times, and what Conway found satisfactory was an instruction which said that none, one, two, or all three of Rakescan's programs or software tools could be found to be a quote, product. And as far as the definition of a product and the need to define it further, I think that was brought up quite well by the witnesses and in closing argument where we pointed to, Mr. Smith and I both pointed to the terms of the contract which define product. And as you pointed out, Judge Jordan, the contract contains a very specific definition. It's a commercial implementation of the program, and it was for the jury to decide if hazmat loader was a commercial implementation, if hazmat trucking enforcer was a commercial implementation, if hazmat green screen was a commercial implementation. And what it found was, yeah, hazmat loader was. It was close enough in functionality and time, but hazmat trucking enforcer was so completely different that it couldn't be a commercial implementation. And again, what Conway is trying to do is ignore two days' worth of testimony and all the evidence that was introduced on the basis of a 10-second exchange in which Mr. Balaban, Rigskin's chief operating officer, says, yeah, hazmat loader was the baseline, but it was the baseline of Rigskin's interpretation of the regulations. And that was it. Hazmat trucking enforcer was a completely new product with completely different functions. Do you have any response to the reply brief argument with respect to your jurisdictional cross-appeal? Well, I do, Your Honor. It's an interesting conceptual argument about where the $75,000 limit, or how do you derive, come up with that $75,000 number so that the federal courts are not opened up to an overwhelming number of contract disputes? If we had a case, let's take another analogy. Let's say Hershey Chocolate decides that it's going to license a chocolate bar, and you're going to sell it for $1. And they went to somebody else and said, we have this great product. It's a Hershey's chocolate bar. We would like you to jazz it up, make it a little bit fancier, and then sell it. And we want you to sell it for $1. And it's going to be, we're going to get royalties, $0.32 on the dollar. Five years down the road, the subsequent companies sold 1,000 candy bars, so there's $320 in royalty. Hershey decides, they breached the agreement, so I'm going to go ahead and sue them in the federal court. They're a Michigan corporation. And my expectancy for the life of this agreement is $272,000, 32% of which is $75,000. So therefore, I'm entitled to be in federal court. Well, I don't think that Congress intended for these open-term contracts to be opened up to the federal courts. Do you agree that if there's a validity of the contract issue, that it is opened up? I think that that law is settled, Your Honor. I don't think there's any dispute about that law. Okay. So they say, you guys breached a contract that said the contract's not any longer enforceable. And they mentioned it in their complaint. That doesn't put in play the validity of the contract? Well, it does to some extent, except I guess the problem I'm having here, the problem that I'm struggling with and that I've always struggled with is, one, at the time of the contract, Rexhaim didn't come anywhere near selling enough product. Rexhaim no longer sells Hazmat, whatever that stock, on the day of the jury verdict. And the total damages that Conway's entitled to aren't even close to $75,000. And I think what happens if you have a contract like this, like what we have here, which is a little bit unique, it's basically they're entitled to royalties in perpetuity. If you have a contract like that, you're basically creating an automatic contract-based exception to diversity jurisdiction so that it reads parties of different states where the amount of controversy is $75,000, unless you have a contract where royalties are due in perpetuity, in which case you always get to go to federal court as long as the parties are from different states. But don't we look at, I think what Judge Jordan was getting to, is we look at the face of the complaint. And if that contains a challenge to the validity, it's hard to argue. It is hard to argue, Your Honor. That's correct. And I think that's one of the reasons why the court can always look at its own jurisdiction. And if, during discovery, this issue comes up, then it gives the chance and opportunity to reconsider its jurisdiction, like we asked the court to do here, where the evidence after the complaint was filed, there wasn't $75,000 at issue. But with respect to that jurisdictional discovery, isn't it true that you repudiated the contract in this actual case? And once you repudiated the contract in toto, then can't the plaintiff argue for its expectancy damages, which would have taken it well beyond the jurisdictional threshold? That is a problem with the argument you're raising. I understand where you're coming from, Judge Hardiman. And that was in a separate action, where one of the issues that Rakeskin had raised was to try to say, no, wait a second, there is no contract. But we lost that argument. And the state court said, no, hold on. I don't care what you tried to do. There is a contract, and you're bound by the terms of that contract. So we went to federal court. Judge Jones said, and said properly, there's a contract here between the parties. And whether I agree with the state court or not, really had no bearing on that statement. And with that, Your Honor, thank you very much. If I might, I'd like to begin with the last point first. I think Judge Rendell correctly stated that at the time of the filing of the complaint, that's the controlling time. At that point in time, the state court action had not been resolved. There was a position that was still live at that point in time that the contract was not valid. And the complaint specifically in anticipation of the possibility that there would be a determination that there was no valid contract includes account for unjust enrichment, which of course then triggers the whole argument about the validity of the contract and takes them outside the cases that are cited by Rakeskin. I also note further that for whatever reason, those cases seem to be unique to the insurance business. And there is no case that has been cited that had to do with a regular contract, and I'll call this a regular contract as opposed to an insurance contract, where of course you have expectancy damages. Mr. Smith, you didn't really argue in your opening argument, your second point in your brief, that is that the trial court erred by submitting to the jury the issue of whether enforcer was covered. Your opposing counsel did mention that. Are you pursuing that argument? That the court improperly submitted that issue? Yes, Judge Rendell. As a separate, again, tied together with the first argument, the court should have taken the issue of covered products, at least in terms of hazmat loader and hazmat enforcer, away from the jury and ruled as a matter of law on that subject. But your proposed point for charge specifically says that you want the court to say to the jury, it's your responsibility to determine whether these items are subject to the licensing agreement. In making that determination, you must determine the intention of the parties. I mean, this is your proposal. Well, I understand correctly. That's absolutely correct, Your Honor. But by this point, we've gotten past a Rule 50 motion. The court has already determined that he is going to send these issues to the jury. So I argue that's a matter... Oh, okay. All right. I see what you're saying. Now, let me ask you about jury instructions. You said in your briefing, wait a second, the judge was in error because this contract needed to be construed before it was given to the jury. Yet there is language in the charge that says, clear and unambiguous language of the agreement is what you rely on. How do you square that up? If it's clear and unambiguous, what requires construction? If it's clear and unambiguous, nothing requires construction. The court applies it as a matter of law. So is your position then that there was no need to construe, but that the court should have taken it and itself applied it against the evidence? I think that in direct response to your question, the trial court should have determined that there were covered products in the form of hazmat loader and hazmat trucking enforcer, and that there was a breach as to those agreements. So no jury, they shouldn't have gone to the jury at all? Well, there was still the green screen product, Judge Rendell, which is a separate and distinct product. If I can, I'm not sure that the jury in the reproduced record, but certainly in the transcript, if you look at page 47 for Mr. Balaban, page 115 through 117 for another witness, and page 94, you will see testimony establishing the sequence that I said before. Reg Scan took the position that none of these products was related to HazCal, and directly asking Mr. Balaban. Wouldn't you, in their position, might as well go for the home run? I certainly would, but on the other hand, I know that they're not appealing the jury's determination that at least one of them fit, and once you get to one, I say you get to the other. But I think I've made that point before. Thank you. Thank you very much. Thank you, counsel. Case is well argued. We'll take it under advisement. Call our third case, which is United States.